IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SARA E.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 20 C 03895 |
| v. | ) |
| | ) Magistrate Judge Beth W. Jantz |
| KILOLO KIJAKAZI, Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Sara E.'s application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [dkt. 20, Pl.'s Mot.] is denied, and the Commissioner's cross-motion for summary judgment [dkt. 24, Def.'s Mot.] is granted.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been substituted for her predecessor.

**BACKGROUND**

I.  **Procedural History**

On November 22, 2016, Plaintiff filed a claim for DIB and SSI, alleging disability since May 1, 2007 due to a learning disability, anxiety, depression, and ADHD. [Dkt. 17-1, R. at 127.] Plaintiff's claim was denied initially and again upon reconsideration. [R. 139, 166.] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on May 16, 2019. [R. 39.] Plaintiff personally appeared and testified at the hearing and was represented by counsel. [R. 39.] A vocational expert ("VE") also testified. [R. 104.] On July 19, 2019, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. [R. 29-30.] The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner.

II. **The ALJ's Decision**

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 15-17.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date of May 1, 2007. [R. 17.] At step two, the ALJ concluded that Plaintiff had the following severe impairments: depression, anxiety, history of a learning disorder, and obesity. [R. 17-18.] The ALJ concluded at step three that her impairments, alone or in combination, do not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [R. 18-22.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform medium work, except that she is capable of only frequent stooping. [R. 22-28.] The ALJ further noted that Plaintiff could learn, understand, carry out, and remember simple instructions, make simple work-related decisions that require utilizing little or no judgment, and can concentrate

on simple tasks, which she can attend and complete on a sustained basis. [R. 22-28.] The ALJ found that Plaintiff is capable of accepting direction from supervisors but should avoid contact with the general public; that Plaintiff is limited to work involving a consistent work environment with predetermined goals and activities; and that Plaintiff was limited to work involving simple instructions and routine repetitive tasks with limited social demands. [R. 22-28.] At step four, the ALJ concluded that Plaintiff had no past relevant work. [R. 28.] At step five, based upon the VE's testimony and Plaintiff's age, education, work experience and RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that she is not disabled under the Social Security Act. [R. 28-29.]

## **DISCUSSION**

### I. Judicial Review

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of

proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner and is reviewable by this Court. 42 U.S.C. § 405(g). *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). The Court plays an "extremely limited" role in reviewing the ALJ's decision. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.*, at 327.

The ALJ has a basic obligation both to develop a full and fair record and to "build an accurate and logical bridge between the evidence and the result [so as] to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837. Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The

4

ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

## II. Analysis

Plaintiff argues that the ALJ committed reversible error by: (1) improperly evaluating the vocational expert's testimony; (2) improperly accounting for Plaintiff's moderate concentration, persistence, and pace limitations; (3) failing to discuss a treating physician's notation regarding Plaintiff's memory; (4) improperly evaluating Plaintiff's ADHD; (5) improperly assigning great weight to a testifying medical expert's opinions; and (6) failing to adequately consider Plaintiff's GAF scores. The Court evaluates each argument in turn (albeit in a different order, as some of Plaintiff's arguments have implications for other issues Plaintiff raises).

### A. Plaintiff Identifies No Error in the ALJ's Evaluation of Dr. Monis's Opinions

Plaintiff argues that the ALJ improperly assigned great weight to the testimony of Dr. Ann Monis, Psy.D., who testified at Plaintiff's hearing before the ALJ. Dr. Monis reviewed the medical record and testified that Plaintiff had moderate limitations in social functioning, mild limitations in concentration, persistence, and pace, and mild limitations in adaptation. [R. 44-52.] Dr. Monis testified that Plaintiff would be able to maintain concentration for both simple and complex tasks; would be able to understand both simple and complex instructions; would be able to engage in both simple and complex tasks independently; and would be able to adapt and respond well to changes in the work setting. [R. 53.] Dr. Monis further testified that Plaintiff would be able to work at an average pace, that Plaintiff could make work-related decisions independently, but that

Plaintiff should have only infrequent contact with supervisors and coworkers and only occasional interaction with the general public. [R. 53.] The ALJ assigned great weight to Dr. Monis's opinions, finding that Dr. Monis had the opportunity to review the medical evidence of record and was familiar with the applicable regulations. The ALJ noted that Dr. Monis's opinion was supported by the fact that Plaintiff is generally independent in self-care and activities of daily living, that Plaintiff's conditions are managed with outpatient treatment, and that Plaintiff has never been psychiatrically hospitalized.

Plaintiff argues that the ALJ improperly evaluated Dr. Monis's opinions because (1) Dr. Monis was not a neutral and impartial witness; and (2) Dr. Monis's opinions were inconsistent with other evidence of record. Neither argument is availing. With respect to Dr. Monis's impartiality, Plaintiff points to Dr. Monis's statement that nothing Plaintiff's attorney could say would change her mind with respect to Plaintiff's limitations. It is unclear how this statement is a sign of Dr. Monis's alleged partiality; Dr. Monis was simply noting that she had conducted a review of the medical record that formed the basis of her opinions, and that questioning from Plaintiff's attorney would not change her opinion. [R. 63.]

Plaintiff also points to Dr. Monis's statements regarding Plaintiff's periods of homelessness, asserting that Dr. Monis testified that Plaintiff's homelessness was a sign of her resilience. If that were the case, Dr. Monis's testimony would indeed be troubling. But Dr. Monis said no such thing; she in fact testified that Plaintiff showed resilience by *demonstrating only mild to moderate symptomology* even though she moved through periods of homelessness. [R. 65.] Nothing about that statement required a finding that Dr. Monis was a partial witness.[3]

---

[3] Plaintiff also suggests that Dr. Monis testified inconsistently regarding the Plaintiff's ability to maintain pace; in reality, Dr. Monis simply would not agree to a specific hypothetical posed by Plaintiff's counsel about whether Plaintiff would follow a specific pattern of off-task time while

6

Plaintiff also argues that the ALJ improperly evaluated the consistency and supportability of Dr. Monis's opinion with the record, citing to records that Plaintiff believes require a finding that Plaintiff is more limited than Dr. Monis concluded. But Plaintiff's argument amounts to little more than a request that the Court reweigh the evidence and come to a different conclusion than the ALJ regarding Dr. Monis's opinions. The Court, however, may not "reweigh the evidence or substitute [its] judgment for that of the ALJ's." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). The ALJ adequately considered the record and provided a sufficient explanation for her evaluation of Dr. Monis's opinions. Nothing more was required. *See, e.g., Spring W. v. Saul*, No. 20 C 1864, 2021 WL 2529615, at *4 (N.D. Ill. June 21, 2021) ("[I]t is sufficient that the ALJ considered the medical evidence and minimally articulated her analysis in a manner that the Court can follow. The ALJ did so here, and the Court therefore upholds the ALJ's weighing of Dr. Amdur's opinion.").

**B. The ALJ's Error at Step Two is Harmless**

Plaintiff asserts that the ALJ erred in concluding at step two that Plaintiff's ADHD was not a severe impairment and that the ALJ failed to adequately account for Plaintiff's ADHD in crafting the RFC. "The Step 2 determination is a *de minimis* screening for groundless claims intended to exclude slight abnormalities that only minimally impact a claimant's basic activities." *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016) (cleaned up). The Court agrees with Plaintiff that the ALJ's step two assessment of Plaintiff's ADHD contains inaccuracies and is not supported by substantial evidence. The entirety of the ALJ's assessment of Plaintiff's ADHD at step two was as follows: "Additionally, the claimant's medical records show that prior to the alleged onset

---

she was engaged in certain identified tasks. [R. 62-63.] Nothing about Dr. Monis's responses to Plaintiff's counsel's questioning was necessarily inconsistent or suggests her partiality.

date, she was diagnosed with ADHD, but was not prescribed medication based upon her adequate ability to concentrate and is not noted to have prominent symptoms of hyperactivity." [R. 17-18.] This is not an accurate summary of the record. The record reflects diagnoses of ADHD by multiple providers well after the alleged onset date, and Plaintiff was prescribed Ritalin in 2017 and 2018. [R. 705, 707-709, 817.] The record the ALJ cited for the proposition that Plaintiff "was not prescribed medication based upon her adequate ability to concentrate" in actuality indicates that Plaintiff "never started on Ritalin" back in 2013, "as [she] never demonstrate[d] sufficient attendance at medical [appointments]." [R. 17-18, 623.] The Court is thus not convinced that the ALJ built an accurate and logical bridge between the evidence and her step two assessment that Plaintiff's ADHD was non-severe.

Nonetheless, the ALJ's error was harmless. An error at step two is harmless where the ALJ properly considers all of Plaintiff's "severe and non-severe impairments, the objective medical evidence, her symptoms, and her credibility when determining her RFC immediately after step 3." *Curvin v. Colvin*, 778 F.3d 645, 649 (7th Cir. 2015). Here, the ALJ proceeded to evaluate Plaintiff's mental impairments, including her ability to maintain concentration and pace and to persist, at both step three—finding that Plaintiff had moderate CPP limitations—and in assessing Plaintiff's RFC before step four. *See, e.g., Taylor v. Berryhill*, 387 F. Supp. 3d 883, 892 (N.D. Ill. 2019) (finding no error where "the ALJ analyzed the four 'Paragraph B' criteria for mental functioning, found no more than mild limitations there, and then discussed whether Taylor's depression warranted further limitations to Taylor's RFC."). Plaintiff asserts that the ALJ failed to adequately consider her poor time management skills—which she links to ADHD— in crafting the RFC, but this is simply a request that the Court reweigh the evidence with respect to Plaintiff's capabilities. In crafting the RFC, the ALJ assessed the evidence regarding Plaintiff's mental

limitations and relied upon the opinions of four medical experts, including a treating physician, who opined that Plaintiff's mental limitations were not so severe as to preclude Plaintiff from performing certain unskilled or simple work.[4] [R. 25-27.] The Court is not empowered to reweigh the evidence and come to a different conclusion.[5]

### C. The ALJ Was Not Required to Specifically Mention Dr. Schultz's Notation

Plaintiff next argues that the ALJ erred by failing to consider a 2015 notation by a treating physician, Dr. Brian Schultz, that "[p]sychological testing in 2013 suggested attention/concentration and memory encoding deficits, as well as pronounced anxiety symptoms." [R. 805.] As an initial matter, this statement is not a "medical opinion" that the ALJ was required to evaluate under the operative regulations. "[T]reatment notes containing only symptoms and diagnoses . . . generally are not medical opinions," in contrast to treatment notes "providing a prognosis, a discussion of what [the claimant] could do despite her impairments, or an assessment of her physical restrictions, which are medical opinions." *Megan G. v. Saul*, No. 19 C 5237, 2021 WL 2105038, at *3 (N.D. Ill. May 25, 2021), *aff'd sub nom. Garza v. Kijakazi*, No. 21-2164, 2022 WL 378663 (7th Cir. Feb. 8, 2022) (cleaned up). The identified note contains only symptoms and

---

[4] Importantly, Plaintiff does not challenge, on appeal, the weight the ALJ assigned to any medical expert's opinions with the exception of Dr. Monis. However, in addition to Dr. Monis, the ALJ also assigned great weight to and relied upon opinions expressed by two agency consultants—Drs. Voss and Gilliland—and Plaintiff's treating physician Dr. Kuehn, who all opined that Plaintiff retained the capacity to perform unskilled or simple work (with certain additional limitations, in the case of the agency consultants). [R. 25-27.]

[5] Plaintiff also argues that the ALJ ignored the opinion of a treating physician that Plaintiff, while taking college courses, needed in person tutoring, assistance in understanding materials, and for teachers to use simple, concise instructions with concrete steps. Pl's Br. at 16. In reality, the ALJ did not ignore this opinion; the ALJ credited it, and assigned it some weight, noting that while those limitations were warranted in the educational context, educational modifications "are not entirely consistent with a determination regarding the claimant's ability to perform work-related activities." [R. 27.] The ALJ thus assessed and afforded some weight to the opinion that Plaintiff says the ALJ failed to consider.

diagnoses. The Court thus evaluates the ALJ's failure to discuss Dr. Schultz's note under the generally applicable framework that an ALJ need not discuss every piece of evidence in the medical record and errs only where she ignores an entire line of evidence contrary to the ruling. *See, e.g., Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). Here, the ALJ adequately addressed Plaintiff's concentration and memory impairments—finding that Plaintiff had moderate limitations in both concentration, persistence, and pace, and understanding, remembering, or applying information—and discussed record evidence and medical opinions addressing Plaintiff's functioning in those areas. Indeed, the ALJ specifically discussed subsequent psychological testing that revealed memory and processing speed deficits, and in fact evaluated much of the evidence that Plaintiff argues cohered with Dr. Schultz's notation. [R. 24-25, 652.] For example, Plaintiff argues that the ALJ failed to consider Dr. Lobur's opinion that Plaintiff required various limitations in the educational setting, but the ALJ evaluated and credited Dr. Lobur's opinion and assigned it some weight in assessing Plaintiff's RFC. [R. 27.] The ALJ thus did not ignore an entire line of evidence contrary to the result by failing to specifically discuss Dr. Schultz's note regarding Plaintiff's 2013 psychological testing.

### D. The ALJ Adequately Considered Plaintiff's GAF Scores

Plaintiff argues that the ALJ improperly evaluated her GAF scores, which were consistently between 35 and 50 over a significant period of time. Courts have been equivocal about the importance of GAF scores to a proper disability assessment. The Seventh Circuit has explained that a GAF score "does not reflect the clinician's opinion of functional capacity," and that "nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on [her] GAF score." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). At the same time, courts have been wary about inconsistent use of GAF

10

scores—*e.g.*, where ALJs use high GAF scores to support a finding of no disability, while at the same time dismissing the importance of GAF scores in discounting the claimant's lower scores. *See, e.g., Carrillo v. Colvin*, No. 13 CV 50395, 2015 WL 875672, at *5 (N.D. Ill. Mar. 2, 2015) (remanding where "the ALJ chose to rely on certain GAF scores, but then he failed to consider all such scores in an equal or fair way or at least did not offer an explanation for his implicit belief that some were more reliable than others."); *see also Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014) (remanding where ALJ cherry-picked single "high-water mark GAF of 60" to support conclusions where claimant's GAF was consistently lower). Courts have also noted that even though GAF scores are not dispositive of a claimant's functioning, a pattern of low GAF scores constitutes relevant evidence that may not simply be ignored. *Jimenez v. Colvin*, No. 13 C 5167, 2015 WL 1592438, at *8 (N.D. Ill. Apr. 6, 2015).

     Here, the ALJ neither ignored Plaintiff's GAF scores nor gave high scores and low scores inconsistent treatment. Instead, the ALJ recognized that GAF scores can offer some evidence regarding the severity of Plaintiff's mental impairment, but noted that GAF scores are snapshots of the claimant's ability to function at a particular time; that GAF scores include factors such as legal, housing, or financial problems that are not properly part of a disability analysis; and that the Commissioner has indicated that GAF scores have no direct correlation to the severity requirements of the mental disorder listings. [R. 27.] The ALJ accordingly assigned little weight to the GAF scores of record. While the ALJ's discussion could have been more robust, it was adequate to support her decision to assign Plaintiff's GAF scores little weight in assessing Plaintiff's RFC. *See, e.g., Colleen M. v. Saul*, No. 19 C 1287, 2021 WL 822934, at *8 (N.D. Ill. Mar. 4, 2021) (affirming where "ALJ explained that the GAF score represents a clinician's subjective evaluation at a single point in time, provides no indication of overall functioning over

11

an extended period, is often determined during a period of significant problems, and may vary between practitioners or from one time to another."); *Michael B. v. Kijakazi*, No. 19-CV-50178, 2021 WL 4502143, at *5 (N.D. Ill. Oct. 1, 2021) (affirming where ALJ noted that GAF "scores have come to be viewed as unreliable by mental health professionals"); *Douglas M. v. Saul*, No. 18 C 3801, 2019 WL 6130817, at *10 (N.D. Ill. Nov. 19, 2019) (affirming where the ALJ "addressed the limited utility of GAF scores and explained that, generally, she accords a GAF score less weight because it represents a clinician's subjective evaluation at a single point in time, it may vary from one time to another or between practitioners, and it is not designed for adjudications.").

### E. The ALJ Adequately Supported the Mental RFC

Plaintiff argues that the ALJ failed to adequately support her mental RFC assessment. Specifically, Plaintiff points to the line of cases indicating that restrictions to simple tasks and simple decision-making do not necessarily account for moderate CPP limitations. *See, e.g., Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). But moderate CPP limitations are not inherently inconsistent "with the ability to perform simple, repetitive tasks at a consistent pace," either. *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021). Limitations to various formulations of unskilled or simple work can properly account for moderate CPP limitations where the record indicates that the limitations address Plaintiff's mental impairments, including where a medical opinion translates a finding of moderate CPP limitations into an RFC that accounts for a claimant's specific impairments. *See, e.g., Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) (affirming where agency consultants "translated" moderate CPP checklist ratings into an RFC that claimant "could carry out simple instructions and make simple decisions with no significant limitation"); *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015) ("True, in some cases, an ALJ may rely on a

12

doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations."); *Morrison v. Saul*, 806 F. App'x 469, 474 (7th Cir. 2020) ("The ALJ drew this restriction from the opinion of the medical expert, Dr. Rozenfeld, which is a permissible way of "translating" medical evidence into work-related restrictions."); *Christopher G. v. Kijakazi*, No. 19 CV 5046, 2022 WL 1989119, at *4 (N.D. Ill. June 6, 2022) (collecting cases).

In this case, the ALJ assigned great weight to four separate medical opinions indicating that Plaintiff retained the functional capacity to perform simple or unskilled work, subject to certain limitations. As noted above, the ALJ assigned great weight to the opinions of Dr. Monis, who concluded that Plaintiff would be able to maintain concentration for simple and complex tasks; would be able to understand simple and complex instructions; would be able to engage in simple and complex tasks independently; would be able to adapt and respond well to changes in the work setting; would be able to work at an average pace; and could make work-related decisions independently. [R. 26, 53]. Dr. Monis additionally noted that Plaintiff should have only infrequent contact with supervisors and coworkers and occasional interaction with the general public. [R. 53.]

The ALJ also assigned great weight to the testimony of agency consultants Dr. Voss and Dr. Gilliland—and Plaintiff notably does not challenge the ALJ's weighing of these opinions on appeal. Dr. Voss found that Plaintiff can understand, remember, and carry out simple but not detailed or complex instructions; make simple work-related decisions that require utilizing little or no judgment; that her distractibility would interfere with her ability to concentrate on more than simple tasks; that she would have no difficulty attending work regularly or completing tasks in a reasonable punctual fashion; that Plaintiff can accept direction from supervisors but should be in

13

a work setting involving limited sustained contact with the public; and that Plaintiff can adapt adequately to work situations and workplace changes with reasonable support but is likely to perform more successfully in a consistent work environment where activities and goals are determined for her. [R. 135-137.] Dr. Gilliland found that Plaintiff was capable of performing 1-2 step tasks in a routine schedule with reasonable rest periods and limited interaction with the general public. [R. 165.] Finally, the ALJ assigned great weight to the opinion of Plaintiff's treating physician, Dr. Jemima Kuehn, whose notes from two visits in 2017 indicated that if she were to complete disability assessment forms for Plaintiff, the forms would state that Plaintiff was capable of performing unskilled work and that she could not state that Plaintiff had significant functional limitations.[6] [R. 26, 640, 643.]

The ALJ thus provided adequate support for her mental RFC assessment. Although the ALJ found that Plaintiff had moderate limitations in concentration, persistence, and pace, the ALJ credited four medical opinions indicating that Plaintiff nonetheless retained the ability to perform unskilled work (subject to certain limitations). Those opinions are reflected in the RFC, which limited Plaintiff to learning, understanding, carrying out, and remembering simple instructions, making simple work-related decisions that require utilizing little or no judgment, and concentrating on simple tasks, with the additional limitations that she should avoid contact with the general public and that her work environment must be consistent and have predetermined goals and activities. [R. 22.] The ALJ thus adequately accounted for Plaintiff's moderate concentration,

---

[6] In another assessment, Dr. Kuehn did note that Plaintiff had marked concentration, persistence, and pace limitations. [R. 1143.] The ALJ did not credit this opinion, and Plaintiff does not challenge the ALJ's assessment of Dr. Kuehn's evaluation on appeal. [R. 26.] Notably, Dr. Kuehn did not appear to view Plaintiff's "marked" CPP limitations as particularly serious, as the progress notes accompanying Dr. Kuehn's completion of the form indicated that Dr. Kuehn advised Plaintiff that the form "likely will not be accepted" because she could not state that Plaintiff "has significant functional limitations." [R. 643, 1143.]

persistence, and pace limitations in the RFC. *See, e.g., Morrison*, 806 F. App'x at 474 (affirming where ALJ adopted medical expert's opinions adequately "translating" claimant's moderate CPP limitations into work-related restrictions).

**F. The ALJ's Errors at Step Five Were Harmless**

Finally, Plaintiff argues that the ALJ erred at step five by indicating that Plaintiff could perform jobs that did not exist. In her opinion, the ALJ cited to three sedentary jobs that someone with Plaintiff's RFC could perform: final assembler (18,000 jobs nationally), table worker (11,000 jobs nationally), and addressing clerk (10,000 jobs nationally). [R. 29.] The VE indeed testified that these jobs would be available to someone with Plaintiff's RFC. [R. 105-109.] On cross-examination, however, the VE conceded that those specific jobs—which are entries in the Dictionary of Occupational Titles (DOT)—are obsolete and do not actually exist today in the national economy. [R. 115-118.] Instead, the VE testified that those jobs are representative of other, real jobs that do exist in the national economy that have a similar valence and require similar physical and mental abilities. [R. 115-118.] For example, the VE noted that the "addressing clerk" job was a stand-in for "an unskilled, sedentary office helper job." [R. 117.]

It is no secret that the "Dictionary of Occupational Titles"—last updated thirty years ago—is wildly outdated, *Ruenger v. Kijakazi*, 23 F.4th 760, 761-62 (7th Cir. 2022) (*per curiam*) ("Since 2008, the Social Security Administration has been working on a project to replace the DOT with an updated publication . . . ."), and the Administration's continued reliance on it would be a running joke among courts and commentators if the stakes weren't so serious. In this case, however, the Court need not assess whether the VE's reliance on obsolete job titles renders his assessment unsupported by substantial evidence because even if it were, the ALJ's reliance on the VE's assessment of sedentary jobs would be harmless error. As the Commissioner points out, the VE

15

also identified medium jobs that someone with Plaintiff's RFC could perform: kitchen helper (225,000 jobs nationally), industrial cleaner (155,000 jobs nationally), and hospital cleaner (110,000 jobs nationally). And the ALJ found that Plaintiff was capable of performing medium work (with frequent stooping, a limitation that did not eliminate the identified positions).[7] [R. 22-24, 106-107.] In neither her opening brief nor her reply brief (after the Commissioner raised her harmless error argument) did Plaintiff argue that the medium jobs identified by the VE were obsolete or otherwise infected by a significant methodological flaw. Courts "will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result." *Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021). This is especially so when the identified error "would be eliminated if the ALJ merely reissued the same opinion, including sentences that set forth [] additional testimony by the vocational expert." *Id*. Here, the ALJ's error was harmless because, on remand, the ALJ would simply replace the obsolete sedentary jobs listed in her opinion with the medium jobs identified by the VE.[8]

---

[7] On reply, Plaintiff suggests—perhaps as a tongue-in-cheek response to the Commissioner's harmless error argument—that the ALJ made a typographical error in determining that Plaintiff was capable of performing medium work. Pl's Reply Br., Dkt. 28 at 3. But there is no indication that the ALJ's determination that Plaintiff was capable of performing medium work—which was reasoned, repeated multiple times, and accompanied by an assessment of the record—was a mere oversight. [R. 22-24.]

[8] Plaintiff argues on reply that the Commissioner's argument regarding the VE's testimony concerning the availability of medium jobs violates the *Chenery* doctrine. But harmless error is an exception to the *Chenery* doctrine. *Parker v. Astrue*, 597 F.3d 920, 924 (7th Cir. 2010).

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment [20] is denied, and the Commissioner's motion for summary judgment [24] is granted. The Court affirms the Commissioner's final decision.

**SO ORDERED.**

Date: 9/13/2022

BETH W. JANTZ
United States Magistrate Judge